The defendant in his answer, admitted the marriage, admitted his having been guilty of a single act of adultery, admitted that he had reason to believe he had communicated a loathsome disease to the petitioner, but averred that at the time, he was ignorant that he was afflicted with it, and denied living in adultery with other women, or having left the petitioner with any intention of abandoning her; but averred that any separation which had taken place during the marriage was either by consent or owing to the voluntary departure of the petitioner. From the evidence on the part of the petitioner it appeared that (190) on 9 August, 1818, when the first separation took place, a division of property was made between the parties whereby the petitioner received a portion of the household goods. About 12 months after this separation the parties again lived together for a short period of time at the house of an aunt of defendant, where the petitioner becoming very sick she was removed to her father's. In the period between the first and second separation, Long, the defendant, spent a short time with his wife at the house of her father, but, being dissatisfied, did not remain. It was proved by two physicians that the petitioner was for some time diseased after she returned to the house of her father, and it was also proved that from the period of that return she had not received her husband to conjugal embraces. On the part of the defendant it was proved that the petitioner declared her willingness to live with her husband, that he had treated her with affection, that she was attached to him, and did not wish a divorce, but that her parents did, and that her separation from Long was not a voluntary *Page 108 
act, but was owing to others. In April, 1821, the petitioner had again declared that the separation between herself and her husband was not attributable to the fault of either, but to others. It was also proved that previous to any separation the defendant had been treated with great harshness by the mother of the petitioner, that he had uniformly treated his wife with affection, and after the separation had written frequently both to her and her father, entreating her return. The character of the defendant for sobriety and temperance was good, and at the time he communicated disease to his wife he was ignorant of having it, and upon discovering that he had done so reflected on himself in the severest terms of reproach.
 Several issues were submitted to the jury, the 3d and 4th of which were as follows:
(191) 3d. Did the defendant, Myles Long, communicate the venereal disease to his wife?
4th. If he did so, has the petitioner, Charlotte, since admitted him into conjugal society and embraces, knowing that fact?
The jury found all the issues in favor of the defendant, and petitioner obtained a rule to show cause why a new trial of the 3d and 4th issues should not be granted. Upon argument the rule was discharged. It was decreed that the petitioner pay costs, and the petition be dismissed. Whereupon the petitioner appealed.
This is a petition for a divorce under the act of Assembly of 1814, which authorizes a dissolution of the marriage contract for two causes only. One of them is out of the question here; and the other, viz., living in adultery, though alleged in the bill, is denied in the answer, and it is not only not sustained by the evidence, but is distinctly disproved. In no view presented by the case could a divorce a vinculo be (192) granted under the law.
The alternative prayer of the petition for a divorce a mensaet thoro is authorized by the act where the husband abandons his family, or turns his wife out of doors, or by cruel and barbarous treatment endangers her life, or offers such indignities to her person as to render her condition intolerable or life burdensome. The only charge coming within this description, is that which the third issue was framed to ascertain, which, though found in favor of the defendant, is nevertheless supported by the evidence of physicians, and even admitted in *Page 109 
the answer. This issue being found against evidence, we should be disposed to grant a new trial of it and the one following, as moved for, if a different verdict could change the result in point of law. But if those issues were found according to the allegations in the petitions, a divorce must still be withheld, the injury received by the petitioner not having been communicated under such circumstances as constitute any one of the causes provided for in the act. It is not meant to extenuate the adulterous act by which the defendant became infected, or to lessen the reprobation which it justly merits. That has lost no part of its original turpitude, and in the view of moral justice the defendant should bear the full weight of all its consequences. But we must estimate the character of the offense according to a positive law, and not attach legal effects to an act of one description which the law has connected with another. The evidence shows that the defendant was not impelled by any settled purpose of mischief, or moved by that brutal disposition which shows itself in repeated acts destructive of the happiness of the married state; that he was unconscious of his situation at the time; and when he afterwards discovered its calamitous effect on the petitioner he expressed his sorrow in the tones of unfeigned remorse. It is in proof that the defendant's general demeanor towards his wife was kind and affectionate, and the declarations of the wife to some of the witnesses show that these parties are very far (193) from being in a state of irreconcilable discord. The busy whispers of officious friends have fomented their occasional bickerings, and the intrusion of relations into the factions of the family has precipitated a separation which might have been avoided. It is to be hoped that the interposition of judicious friends will enable these parties to find their way back to domestic harmony, and the evidence in the case warrants the belief that their dislike towards each other will be found the least formidable obstacle to a reunion. A new trial is refused.
PER CURIAM. No error. *Page 110